UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN GUY,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>COUNTY OF SAN DIEGO,<br>JASON ROLAND and<br>DOES (NAMED AND UNNAMED)<br><br>　　　　　Defendants. | Civil Case No. 05cv1246 J (CAB)<br><br>**ORDER GRANTING**<br>**DEFENDANTS' MOTION FOR**<br>**SUMMARY JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment ("Motion") as to all claims in Plaintiff Shawn Guy's ("Plaintiff") Complaint. [Doc. No. 34.] Plaintiff filed an Opposition to the Motion for Summary Judgment ("Opposition"), and Defendants filed a Reply to the Opposition ("Reply"). [Doc. Nos. 38, 40.] Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the pleadings submitted and without oral argument. *See* S.D. Cal. Civ. Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety.

///

///

///

*Factual Background*

**I.     Defendants' Version of the Facts**

    **A. Transfer to Central Jail for Medical Care Following Nurse Evaluation**

At about 7:00 a.m. on September 18, 2004, Plaintiff asked to see a nurse at the Descanso honor camp detention facility reporting that he was hit in the left side of his torso during a fight with other prisoners the day prior. (Decl. Earl Goldstein ¶ 4; Decl. Jason Roland ¶ 10; Ex. A.) He was immediately taken to the dispensary. (Decl. Earl Goldstein ¶ 4; Decl. Jason Roland ¶ 10; Exs. A, B.) At about 7:06 a.m., Nurse Antonio Gonzales, RN, evaluated Plaintiff because of his complaints of pain accompanying movement. (Decl. Earl Goldstein ¶ 4; Ex. B.) Slight bruising was seen about Plaintiff's left side ribs. (Decl. Earl Goldstein ¶ 4; Ex. B.) Because of a small amount of blood found in Plaintiff's urine, Nurse Gonzales arranged for Plaintiff to be transported to Central Jail for further medical evaluation. (Decl. Earl Goldstein ¶ 4; Ex. B.) Plaintiff was driven to the Central Jail and arrived at about 9:22 a.m. that same morning. (Decl. Jason Roland ¶ 10; Ex. H1.)

    **B. Sergeant Roland's Contact With Plaintiff**

On the morning of September 18, 2004, Sergeant (Sgt.) Jason Roland was at the elevator lobby on the second floor of the Central Jail when he observed Plaintiff in a nearby holding cell. (Decl. Jason Roland ¶ 4.) The cell contained a phone, and was located about 30 feet away from the jail's nursing station. (*Id.*) Plaintiff got Sgt. Roland's attention, and informed Sgt. Roland that he had been in a fight and was waiting to see medical. (*Id.*) Sgt. Roland informed him that there were some restrictions on housing inmates with medical problems at the Descanso honor camp facility and that his status would be determined by medical staff. Plaintiff was not pleased. (*Id.*) According to Sgt. Roland, Plaintiff did not appear to be in pain or having any other problems. (*Id.*) Plaintiff did not complain of pain, and did not ask Sgt. Roland to get medical staff to see him. (*Id.*) The contact between Plaintiff and Sgt. Roland lasted about thirty seconds to one minute. (*Id.*)

Between thirty minutes to an hour after speaking with Plaintiff, Sgt. Roland picked up a telephone call that had been forwarded to the inmate processing office. (*Id.* at ¶ 5.) The caller identified herself as Plaintiff's mother and expressed concern about his condition. (*Id.*) Sgt. Roland informed the caller that Plaintiff looked fine with no obvious signs of injury, and that Plaintiff's

primary concern seemed to be returning to Descanso as quickly as possible. (*Id.*) The caller said she had just gotten off the phone with Plaintiff, and that he said he was in serious pain and urinating blood. Sgt. Roland asked the Plaintiff's mother to hold for five minutes so he could check on Plaintiff's condition. (*Id.* at ¶ 6.)

Sgt. Roland went to the holding cell where he first met Plaintiff and saw Plaintiff was still occupying the cell. (*Id.*) He told Plaintiff that Plaintiff's mother was on the phone and expressing concern about his condition. (*Id.*) Plaintiff did not complain about any medical condition, nor did he request medical care. (*Id.*) Plaintiff's appearance had not changed since Sgt. Roland's observation of him during their first contact. (*Id.*)

Sgt. Roland left Plaintiff's cell and went to the nursing station to have a nurse look up Plaintiff's medical status. (*Id.* at ¶ 7.) The nurse found no information indicating that Plaintiff was experiencing any urgent or serious medical condition. (*Id.*) Rather, the nurse informed Roland that medical staff knew Plaintiff was present and ready for evaluation. (*Id.*) Sgt. Roland returned to the phone to report the information to Plaintiff's mother, but she had hung up without leaving a call back number and did not call back. (*Id.*) Sgt. Roland did not see or hear from Plaintiff until after Plaintiff collapsed in his cell five days later. (*Id.* at ¶ 8.)

**C. Physician Evaluation and Nursing Assessment on Morning of September 18th**

At about 10:09 a.m. at the Central Jail, Nursing staff assessed Plaintiff and obtained his vital signs. (Decl. Earl Goldstein ¶ 5; Ex. C.) At about 10:18 a.m., Dr. Frank Lin evaluated Plaintiff. (Decl. Earl Goldstein ¶ 5; Ex. D.) Plaintiff reported that he could not take a deep breath, and felt somewhat light headed and dehydrated. Dr. Lin's impression on examination was that Plaintiff had bruised or possibly fractured ribs. (Decl. Earl Goldstein ¶ 5; Ex. D.) Dr. Lin prescribed Naprosyn for the physical discomfort and suggested x-rays if there was no improvement in three to four days. (Decl. Earl Goldstein ¶ 5; Ex. D.)

**D. Nursing Evaluation the Evening of September 18, 2004**

At 10:21 p.m., Nursing staff examined Plaintiff because he reported having blood in his urine. (Decl. Earl Goldstein ¶ 6; Ex. E.) Nurse staff found that Plaintiff was ambulatory, had a steady gait, was alert, oriented and did not otherwise exhibit any signs of distress. (Decl. Earl

Goldstein ¶ 6; Ex. E.)  His urine was observed to be clear and yellow and the urine dip conducted was negative for blood and otherwise unremarkable.  (Decl. Earl Goldstein ¶ 6; Ex. E.)  Plaintiff was informed that the discomfort would persist, but if it did not improve or became worse he should inform the staff.  (Decl. Earl Goldstein ¶ 6; Ex. E.)

### E. Other Medical Evaluations and Treatment Between September 19, 2004, and Plaintiff's Collapse on September 23, 2004

Pursuant to Dr. Lin's prescription, Naprosyn was administered to Plaintiff on several occasions between his evaluation and his collapse.  (Decl. Earl Goldstein ¶ 8; Ex. G.)  Plaintiff did not submit any subsequent sick call requests for medical care.  (Decl. Earl Goldstein ¶ 11.)  Plaintiff had social visits on September 19, 2004, and September 22, 2004 without reporting medical distress. (Decl. Jason Roland ¶ 11; Decl. Earl Goldstein ¶ 11; Ex. J.)  Medical staff took x-rays of Plaintiff on September 21, 2004, at 7:30 p.m.  (Decl. Earl Goldstein ¶ 7; Ex. F.)  The x-rays were negative for left rib fracture and no other problems were noted.  (Decl. Earl Goldstein ¶ 7; Ex. F.)

### F. Plaintiff's Early Morning Collapse

On September 23, 2004, at about 12:34 a.m., medical staff attended to Plaintiff in his housing unit, responding to a report that he had collapsed while using the toilet.  (Decl. Earl Goldstein ¶ 9; Ex. I.)  Plaintiff's symptoms at the time included low blood pressure, an altered state of awareness, diaphoresis, and cold, clammy skin.  He did not have these symptoms previously.  (Decl. Earl Goldstein ¶ 9; Ex. I.)  Plaintiff was sent to the emergency room at UCSD medical center, where he was admitted and underwent an emergency spleenectomy that same day. (Decl. Earl Goldstein ¶ 9; Ex. I.)  Plaintiff recovered without complications.  (Decl. Earl Goldstein ¶ 9.)

## II. Plaintiff's Version of the Facts

On September 18, 2004, as a result of an attack on Plaintiff's person at the Descanso detention facility, Plaintiff was so badly injured that he needed immediate hospitalization.  Instead, he was transported to Central Jail.  (Pls. Opp'n to Defs.' Mot. for Summ. J. at 2.)  Upon arrival at Central Jail, Plaintiff saw a physician who prescribed Naprosyn for pain from his physical injuries.  (Second Am. Compl. at 1-2. ("SAC") at ¶ 10.)  A nurse examined him later that evening, and he was

scheduled for an x-ray three days later. (*Id.*) The nurse told Plaintiff to notify staff if the pain persisted. (*Id.*)

Over the course of the next few days, Plaintiff's condition deteriorated and he experienced excruciating pain in his chest, stomach, and side. (*Id.* at ¶ 11.) He was also nauseous, hot, sweaty, and extremely weak. (*Id.*) Between September 19 and September 23, Plaintiff filed numerous written requests for medical attention. (*Id.*) Plaintiff's pain and symptoms became progressively worse, and he pleaded with deputies and nurses to help him obtain medical care every time they walked past his cell. (*Id.*) Plaintiff was x-rayed on September 21, and received Naprosyn as prescribed every day, but received no other medical attention. (*Id.*) All of Plaintiff's requests for help were ignored, and on September 23, 2004, Plaintiff collapsed while on the toilet and needed an emergency spleenectomy. (*Id.*)

Plaintiff's mother learned of his serious medical condition and repeatedly called prison staff to help her son get needed treatment. (*Id.* at ¶ 12.) Plaintiff's mother talked to Defendant Sgt. Roland, but he was rude to her and denied her requests to get her son medical help. (*Id.*) Sgt. Roland went so far as to taunt her, saying "I sent inmates to the hospital for far less, I'm just not sending your son." (Pls.' Opp'n to Defs.' Mot. for Summ. J. at 2.) As a result of Plaintiff's surgery, his immune system is compromised for life and he has a noticeable scar. (*Id.* at 3.) He also will have to take several expensive prescription medications on a regular basis for the rest of his life. (*Id.* at 3-4.)

### *Procedural History*

In June 2005, Plaintiff filed a Complaint against the County, Sgt. Jason Roland, and Does 1-20. (Compl. at 1.) Plaintiff alleged a federal civil rights claim for deliberate indifference to medical care against all Defendants, a municipal federal civil rights claim for deliberate indifference to medical care against the County and Does 1-10, a medical negligence claim against the County, Does 1-20, and a state law claim against the County and Does 1-10 for failure to summon medical

1 care. (*Id.* at 5-9.) In October 2005, Plaintiff amended his Complaint[1] to add a claim against Sgt.
2 Roland for failure to summon medical care under California Government Code section 845.6. (*See*
3 First Am. Compl. at 9.) Because neither the County nor Sgt. Roland were medical practitioners,
4 the Court dismissed Plaintiff's medical malpractice claim against the County and Sgt. Roland in July
5 2006. (*See* Order dated Jul. 11, 2006.) However, Plaintiff was given time to amend his petition to
6 name Doe defendants for the medical malpractice claim. (*See id.*) Defendants then answered the
7 balance of the First Amended Complaint. (Answer.)

8 In January 2007, Plaintiff again amended his Complaint to substitute named parties for Doe
9 defendants. (*See* SAC at 1-2.) None of those people were served with the second amended
10 complaint. (Defs.' Mem. P. & A. Supp. Mot. for Summ. at 2.) By agreement between the parties,
11 the County and Sgt. Roland were not required to file a further answer to the second amended
12 complaint, and the answer to the first amended complaint was deemed responsive thereto because
13 no new claims were being asserted against them. (*Id.*)

14 Consistent with the litigation schedule provided to the parties following the Early Neutral
15 Evaluation Conference in February 2007, Defendants propounded interrogatories and
16 designated expert witnesses. Plaintiff did not respond to the interrogatories. (*Id.*). On April 24,
17 2007, Plaintiff's attorney withdrew from the case. (*Id.*) Plaintiff's deposition was twice noticed
18 and twice Plaintiff failed to appear. (*Id.*) Defendants' Motion followed. (*Id.*)

### *Legal Standard*

**I. Summary Judgment Standard**

21 Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure
22 on "all or any part" of a claim where there is an absence of a genuine issue of material fact and
23 the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (2006); *see also*
24 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is
25 to dispose of factually unsupported claims or defenses. *See Celotex,* 477 at 323-24. A fact is

---

[1] The Court notes that the defendants listed in each cause of action vary between Plaintiff's Complaint and his First Amended Complaint with no explanation. For simplicity purposes, the variances have been simplified to explain the important changes with respect to the Third Amended Petition.

material when, under the governing substantive law, the fact might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When making its determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *See id.* at 322-23. If the moving party fails to meet this initial burden, summary judgment must be denied. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Thus, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 252); *see also Matsushita*, 475 U.S. at 586 (stating that once the moving party meets the initial burden, its opponent must "do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, it is insufficient for the party opposing summary judgment to "rest upon the mere allegations or denials of [his or her] pleading." Fed. R. Civ. P. 56(e). Rather, the party opposing summary judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56(e)).

Furthermore, a court is not obligated "to scour the records in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). "[T]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). Moreover, "[a] district court must enter summary judgment against a party who fails to make a showing sufficient to establish an essential element of a claim, even if genuine factual disputes exist regarding other elements of the claim." *Cunningham v. City of Wenatchee*, 214 F. Supp. 2d 1103, 1110 (E.D. Wash. 2002) (citing *Celotex*, 477 U.S. at 323-24).

## *Discussion*

Defendants have moved for summary judgment to all of Plaintiff's claims, arguing that (1) Plaintiff has not shown Defendants were deliberately indifferent to Plaintiff's serious medical needs; (2) Sgt. Roland is entitled to qualified immunity on Plaintiff's section 1983 claim; (3) there is no evidence that Plaintiff's constitutional right to medical care was violated nor is there evidence of any deliberately indifferent municipal policy, and thus, the County is entitled to summary judgment on Plaintiff's municipal civil rights claim for deliberate indifference to medical needs; and (4) Defendants are entitled to summary judgment on the Government Code section 845.6 failure to summon medical care claim because there was no evidence that Sgt. Roland or any County employee knew, or would have reason to know that Plaintiff had a serious medical condition. (*See* Defs.' Mem. P. & A. Supp. Mot. for Summ. Judg. at 8, 10 ,12, 14.)

Plaintiff, now *pro se*, submitted his Opposition on September 24, 2007. (*See* Order dated April 24, 2007, Pl. Opp'n to Def. Mot. for Summ. Judg.) In his Opposition, Plaintiff argues that he was provided inadequate medical care in that his spleen condition was not properly diagnosed and surgical intervention was not earlier provided. (*See id.*). Plaintiff contends County and Jail staff

acted with intentional neglect and indifference, causing the added infliction of emotional distress to his medical condition. (Pl. Opp'n to Def. Mot. for Summ. Judg. at 2.) The Opposition does not specifically address the Defendants' Motion for Summary Judgment, but makes several unsupported claims. (*See id.*)

In the Reply, Defendants argue that (1) Plaintiff's contention of medical negligence does not provide a basis for liability against any defendant, (2) there is no evidence to support Plaintiff's medical negligence contention, (3) deliberate indifference cannot be premised on a failure to diagnose, (4) there is no evidence of any deliberate indifference policy, (5) Sgt. Roland is not liable for deliberate indifference, (6) Sgt. Roland did not violate Government Code section 845.6, and (7) there are several evidentiary bars to Plaintiff's Opposition. (Def. Reply to Pl. Opp. to Mot. for Summ. Judg.)

For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**I. Eighth Amendment Deliberate Indifference Claim**

Defendants move for summary judgment on Plaintiff's claim that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (*See id.* at 8.) Defendants argue that Plaintiff provides no evidence to support a showing sufficient to establish that Defendants were deliberately indifferent to Plaintiff's medical needs because he received extensive medical attention. (*Id.* at 8-10.)

The Eighth Amendment's cruel and unusual punishment clause "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions" and is only applicable to prisoners. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). A prison official's deliberate indifference to a substantial risk of serious harm to an inmates' health violates the Eighth Amendment because it constitutes the "unnecessary and wanton infliction of pain." *See Farmer v. Brennan*, 511 U.S. 825, 828 (1970); *see also Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976); *McGuckin v. Smith*, 974 F2d 1050, 1059 (9th Cir. 1992) (*overruled on other grounds*). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to the inmate's health or safety." *Farmer*, 511

U.S. at 837. Moreover, even if a prison official should have been aware of the risk, but was not actually aware, then the official has not violated the Eighth Amendment, no matter how severe the risk. *See Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002). Accidents, inadvertent failures to provide medical care, malpractice, and even gross negligence will not suffice to demonstrate deliberate indifference. *McGuckin*, 974 F.2d at 1060; *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Even negligent errors or omissions such as failing to take a medical history and failing to diagnose an injury cannot, as a matter of law, support the inference that a defendant medical practitioner acted purposefully with deliberate indifference. *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 525 (9th Cir. 1999).

In addition, a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, a mere delay in medical treatment, absent a showing of resulting substantial harm, is insufficient to support an Eighth Amendment violation. *Shapley v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Instead, Plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances ... and that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

**A. Summary Judgment Should be Granted as to Plaintiff's Eighth Amendment Claim Against Defendant Sgt. Roland**

Plaintiff has failed to produce sufficient evidence proving that Defendant Roland took part in denying, delaying or interfering with prisoners' receipt of medical care. Plaintiff bases his Eighth Amendment claim against Sgt. Roland on his allegation that Roland "boasted" to Plaintiff's mother that he "send[s] inmates to the hospital for far less, I'm just not sending your son." (Pl.'s Opposition to Defs.' Mot. for Summ. J. at 2.) Plaintiff's mother, however, failed to verify this allegation in a declaration. Instead, as Defendants point out, this evidence of what Sgt. Roland told Plaintiff's mother in a phone conversation to which Plaintiff was not a party is inadmissible hearsay because it is Plaintiff's account. The Court cannot consider inadmissible evidence in a summary judgment motion. *See Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1135 n.9 (9th Cir.

1980); *In re Citric Acid Litig.*, 996 F. Supp. 951, 957 (N.D. Cal. 1998).  Therefore, the Court will not consider this allegation when weighing the evidence.

While Plaintiff has failed to provide any evidence to support his claim, Defendants have produced Sgt. Roland's verified declaration indicating that Roland only interacted with Plaintiff for a little over a minute. (*See* Decl. Jason Roland ¶¶ 4-6.) This declaration shows that during the encounter, Plaintiff neither complained of injury nor requested to be taken to receive medical care. (*Id.*)  Defendants have demonstrated that the Plaintiff failed to make a showing sufficient to establish Roland's deliberate indifference.  *See Celotex,* 477 U.S. at 322-23.   Defendants inform the Court that Plaintiff failed to answer their interrogatories, and twice failed to appear for a noticed deposition.  (*See* Mem. of P. & A. Supp. Mot. Summ. J. at 2.)  Instead of making his case through the discovery process, Plaintiff rested "upon the mere allegations or denials of [his] pleading."  Fed. R. Civ. P. 56(e).  Viewing the evidence in the light most favorable to Plaintiff, the Court **FINDS** that there is insufficient evidence to find that Defendant Roland denied, delayed, or interfered with Plaintiff's receipt of medical care.

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Defendant Roland on the ground that Plaintiff failed to raise a genuine issue of material fact on his Eighth Amendment claim of deliberate indifference to a serious medical need.

**B. Summary Judgment Should be Granted as to Plaintiff's Eighth Amendment Claim Against All Other Defendants**

Plaintiff also raised an Eighth Amendment claim against other Central Jail sheriff's deputies and members of the Central Jail prison medical staff. (*See* SAC at 5-6.) Namely, Plaintiff alleged that sheriff's deputies Painter, Paje, Olson, Fitzgerald, Barry, Russell, Sheehan, Brown, Hunter and Cardenas, and prison medical staff members Evangelista, Chavez, Gross, Mago, Velez and Adovia knew of Plaintiff's medical problems, but nonetheless ignored Plaintiff's requests for medical attention. (*Id.*)  Plaintiff also raised this claim against unknown defendants Does 20-30. (*Id.*)

In support of this claim, Plaintiff filed his verified Opposition to Defendants' Motion for Summary Judgment, in which Plaintiff stated that his repeated requests for help from Central Jail staff were ignored.  (Pl.'s Opposition to Defs.' Mot. for Summ. J. at 2.)  Plaintiff stated, "I put in request after request for help .... No one at Central Jail could have cared less." (*Id.*)  In his verified

Opposition, however, Plaintiff acknowledges that medical staff did administer an x-ray, and that medical staff responded when he collapsed. (*See id.* at 2-3.)

Defendants, in response to Plaintiff's allegations, submitted numerous medical records documenting Plaintiff's medical treatment while he was housed at Central Jail. (*See* Def. Mot. for Summ. J., Exs. A- I.) In addition, Defendants submit the declaration of the Sheriff's department director of medical services, Dr. Earl Goldstein. Dr. Goldstein reviewed the Jail Information Management System ("JIMS") documentation regarding Plaintiff's medical care at the Descanso honor camp detention facility and at the Central Jail between September 18, 2004, and September 23, 2004. (Decl. Earl Goldstein ¶ 3.) JIMS documentation is regularly kept by the jail in the course of its operation and are official jail medical records. (*Id.*) According to JIMS records, Plaintiff received a nursing assessment and physician evaluation on September 18, 2004. (*Id.*) These records also reflect that Plaintiff's x-ray was taken on September 21, 2004, and that Plaintiff agreed to inform staff if his injury did not improve in two days or became worse. (*Id.* at ¶ 6.) Plaintiff was given a medication, Naprosyn, on several occasions between his initial transfer to Central Jail and his collapse. (*Id.* at ¶ 8.) On September 23, 2004, when Plaintiff did collapse, prison medical staff assessed him and sent him to the emergency room. (*Id.* at ¶ 9.)

Defendants' evidence suggests that medical staff at the Descanso facility and at Central Jail was attentive and responsive to Plaintiff's medical needs. Nursing staff and prison physician Dr. Frank Lin conducted a series of tests including a urine dip and x-rays. (*Id.* at ¶¶ 5-6.) The staff's medical examinations revealed what appeared to be, at worst, some bruising or broken ribs. (*Id.*) During these examinations, Plaintiff did not display any symptoms attendant to the spleen problem for which he was later treated. (*Id.* at ¶ 11.)

Defendants' records suggest that Plaintiff did not request medical assistance at any point between his initial evaluation on September 18, 2004, and his collapse on September 23, 2004. (*Id.*) Plaintiff, in his verified Opposition, accuses the staff of repeatedly ignoring his pleas for help. (Opp'n to Defs.' Mot. for Summ. J. at 2.) The medical records, however, indicate that prison medical staff attended to Plaintiff on multiple occasions. (*See id.*; Exs. A-I.) Plaintiff was taken to the dispensary immediately after his initial request to see a nurse. (Decl. Earl Goldstein ¶ 4; Decl.

Jason Roland ¶ 10; Exs. A, B.) Officials transferred Plaintiff to another facility where he could receive further medical care. (Decl. Early Goldstein ¶ 4; Ex. B.) A physician evaluated Plaintiff the morning he was transferred to Central Jail, and a nurse examined him that evening. (Decl. Earl Goldstein ¶ 5-6.) Plaintiff therefore cannot prevail on his claim of deliberate indifference to his serious medical needs. *See e.g.*, *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (summary judgment for defendants where evidence showed plaintiff received medical care).

Therefore, this Court **GRANTS** the summary judgment motion with respect to the other named and unnamed defendants.

**II. Summary Judgment Should be Granted as to Plaintiff's Municipal Civil Rights Claim**

Beyond the claim against individual jail personnel for denying, delaying and interfering with receipt of medical care, a plaintiff may also seek to impose municipal civil rights liability on the public entity operating the jail on the theory that one of its policies or customers directed or led the jail personnel to violate the prisoner's Eighth Amendment right. A municipality may be sued for a policy, custom, or program that directs, causes, or is evident of deliberate indifference to a constitutional right. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Canton v. Harris*, 489 U.S. 378, 389 (1989). Because public entities "cannot be held liable under § 1983 on a respondeat superior theory" for constitutional violations committed by any of its officers or employees, civil rights liability attaches to the public entity only if one of the entity's policies, customs, or practices was the moving force, that is the cause, of a constitutional violation. *Monell*, 436 U.S. at 691, 694. This "'official policy' requirement was intended to distinguish the municipalities' acts and its employees' acts, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur* v. *City of Cincinatti*, 475 U.S. 469, 479 (1986).

Four elements must be satisfied to prove municipal liability: "(1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *Canton*, 489 U.S. at 389-91). Plaintiff's municipal federal civil rights

claim fails in the first instance because no County employee violated plaintiff's constitutional right to medical care. Prerequisite to any municipal civil rights claim is proof that a municipal employee violated at least one of a plaintiff's constitutional rights; if no violation occurred, the municipal civil rights claim is moot. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994). Here, Plaintiff's municipal civil rights claim against the County is premised on the allegation that Roland denied, delayed, or obstructed Plaintiff's access to medical care. (*See* SAC at 7-8.) Because there is insufficient evidence that Roland or any other municipal employee acted with deliberate indifference to Plaintiff's medical needs, Plaintiff's municipal liability claim must fail as well.

Accordingly, this Court **GRANTS** summary judgment with respect to Plaintiff's municipal civil rights claim.

**III. Summary Judgment Should be Granted on the Government Code 845.6 Failure to Summon Medical Care Claim**

Plaintiff also brings a claim against Sgt. Roland and the other named and unnamed defendants under California Government Code section 845.6, alleging failure to summon medical care. (SAC at 10). A government employee only has a duty to summon, that is, call for medical help in those limited instances where the employee knows or has reason to know that the prisoner is in need of immediate medical care. Cal. Gov't Code § 845.6. "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate medical care." *Watson v. State*, 21 Cal. App. 4th 836, 841 (1993). Prison authorities cannot be held liable for failure to recognize that a prisoner's medical condition has been properly diagnosed and treated. *See id.* at 843.

The evidence shows that neither Sgt. Roland nor any other County employee knew or had reason to know that Plaintiff had a serious medical condition requiring immediate care. Roland interacted with Plaintiff for less than a minute and knew that prison medical staff planned to examine Plaintiff shortly thereafter. (*See* Decl. Jason Roland ¶ 4.) Central Jail nurses assessed Plaintiff, a physician examined him and conducted a urinalysis, Plaintiff was administered medication, and he was examined by x-ray. (Decl. Earl Goldstein ¶ 4-8.) None of these tests revealed Plaintiff's medical condition. (*See id.*) Indeed, Plaintiff displayed no outward symptoms

of a serious internal injury. (*See id.*) When Plaintiff collapsed, prison staff responded quickly and rushed him to the hospital. (*See id.* at ¶ 9.) None of the medical providers or prison staff recognized Plaintiff's spleen injury because it was not readily apparent. (*See id.*)

Based on the foregoing, the Court **GRANTS** summary judgment on Plaintiff's California Government Code section 845.6 claims.

**IV. Plaintiff's Negligence Claims in his Opposition are Inappropriate**

Plaintiff's Opposition restated his earlier contention that the prison medical staff provided inadequate medical care in that his spleen condition was not properly diagnosed and surgical intervention not earlier provided. (*See* Pl.'s Opp'n to Defs." Mot. for Summ. J. at 1-3.) The essential elements for a professional medical negligence cause of action include the defendant's act or omission which breached the duty of care, a proximate causal connection between the act or omission and the plaintiff's resultant injury, and actual damages. *Stafford v. Shultz*, 42 Cal. 2d 767, 774-75 (1954). The standard of care used to evaluate whether the medical provider's conduct fell below the standard, is that standard of care, skill, and knowledge ordinarily possessed and exercised by members of the medical profession in the same or similar locality or circumstances. *Sinz v. Owens*, 33 Cal. 2d. 749, 753 (1949); *Alef v. Alta Bates Hospital*, 5 Cal. App. 4th 208, 214 (1992). "Causation must be proven within a reasonable medical probability based on competent expert testimony." *Dumas v. Cooney*, 235 Cal. App. 3d 1593, 1603 (1991). Here, Plaintiff offers no expert testimonial evidence to support his contention of medical negligence. Thus, Plaintiff's argument is an insufficient basis to oppose Defendants' summary judgment motion.

**A. Plaintiff's Medical Negligence Claims Against the County and Sgt. Roland Were Dismissed at the Pleading Stage and Cannot be Reasserted**

On November 1, 2005, Defendants submitted to this Court a Motion to Dismiss all of Plaintiff's claims. (Def. Mot. to Dismiss.) In its reasoning to dismiss the medical negligence claim, Defendants argued that Plaintiffs cannot direct a medical negligence claim against Defendants San Diego County and Sgt. Roland because the County is immune from liability for medical malpractice claims by prisoners, and Roland is not a medical practitioner subject to a medical malpractice suit. (*See id.* at 2-3.) In Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff conceded that a medical negligence claim may not be brought against the County itself and that Roland was not

intended to be a defendant in the medical negligence claim. (*See* Pl. Opp'n at 4.) As a result, this Court dismissed Plaintiff's medical negligence claims against the County and Sgt. Roland. (*See* Order dated July 10, 2006 at 7-8.) Therefore, Plaintiff's reassertion of those claims is not appropriate at this time.

### B. Plaintiff's Medical Negligence Claims Against the County and Sgt. Roland Were Dismissed at the Pleading Stage and Cannot be Reasserted

In Plaintiff's Opposition to Defendants' Motion to Dismiss, he did assert that he had a viable cause of action against the unidentified health care professionals, Does 1-10. (*See id.*) As a general rule, the use of Doe defendants is not favored in the Ninth Circuit. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980) (citation omitted). However, when the identities of Doe defendants are not known prior to filing of the complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities[.]" *Id.* Thus, this Court denied Defendants' Motion to Dismiss the medical negligence claims against Doe defendants and gave Plaintiff ninety days to file a motion to amend his First Amended Complaint to name Doe defendants. (Order dated July 10, 2006 at 8.)

After a subsequent extension (*see* Order dated September 13, 2006), Plaintiff filed his Second Amended Complaint substituting named parties for "Doe" defendants on January 9, 2007. (*See* SAC at 1-2.) In his Second Amended Complaint, Plaintiff restates his original contentions against the newly added Defendants, listing several acts and omissions. (*See* 8-9.) However, Plaintiff fails to explain how the medical treatment Plaintiff received fell below the standard of care exercised by members of the medical profession in the same or similar locality circumstances. *See Stafford*, 42 Cal. 2d at 774-75. In addition, Plaintiff makes blanket assertions of causation, without providing any expert testimony. *See Dumas*, 235 Cal. App. 3d at 1603. Thus, Plaintiff's argument is an insufficient basis to defeat Defendants' summary judgment motion.

///
///
///
///
///

*Conclusion*

For the reasons set forth above, this Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

DATED: February 22, 2008

HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: Magistrate Judge Cathy Ann Bencivengo
    All Counsel of Record